**Lamar J. VILLARREAL, James D. Stokes, and Robert Davila, Appellants,**

v.

**Ernesto "Pepe" WILLIAMS, Jr., Individually and In His Official Capacity as Mayor of the City of Falfurrias, Texas, and the City of Falfurrias, Texas, Appellees.**

No. 04–97–00196–CV.

Court of Appeals of Texas, San Antonio.

March 31, 1998.

Ben M. Sifuentes, Jr., Combined Law Enforcement Associations of Texas, San Antonio, for Appellant.

Ken Fields, Hunt, Hermansen, McKibben & English, L.L.P., Corpus Christi, for Appellee.

Before RICKHOFF, STONE and DUNCAN, Justice, JJ.

## OPINION

STONE, Justice

Lamar Villarreal, James Stokes, and Robert Davila, former Falfurrias police officers, appeal the granting of a summary judgment in favor of the City of Falfurrias and Mayor Ernesto "Pepe" Williams, Jr. on their retaliatory discharge claims. Because appellants filed their petition more than 90 days after the alleged wrongful discharge occurred, we affirm the summary judgment.

### FACTUAL & PROCEDURAL HISTORY

On June 13, 1995, the Falfurrias City Council met and discussed, among other things, the city budget. Ostensibly faced with budgetary shortfalls, the Council voted to reduce the police department by three officers, with the chief of police to designate the officers to be terminated. The chief of police was notified of the Council's decision and request that he select the officers. On July 10, 1995, the police chief selected the appellants as the officers to be terminated. The following day the Council reconvened, reconsidered the issue, and voted to proceed with the terminations. Each appellant was present at the July 11th City Council meeting and was aware that he had been designated to be discharged. At that point, although the downsizing effort was attributed to fiscal constraints, the appellants believed they had been retaliated against for recent whistleblowing activities. On July 17, 1995, Mayor Williams sent written notification to each appellant confirming his termination effective August 1, 1995.

On October 10, 1995, in a City Council meeting, Mayor Williams announced that the City could afford to purchase new police vehicles with the budgetary surplus created by the appellants' terminations. On October 30, 1995, appellants filed suit against the City and Mayor Williams for retaliatory discharge under the Texas Whistleblower Act. *See* TEX.GOV'T CODE ANN. § 554.001 et seq. (Vernon 1994). Both appellees moved for summary judgment on the basis that appellants' claims were time barred, and Mayor Williams individually moved on the basis that the Act does not provide a cause of action against an individual. *See* TEX.GOV'T CODE ANN. §§ 554.002, 554.008(e) (Vernon 1994 & Supp.1998) (prohibiting retaliation by state or local governmental entity; individual only subject to fine as penalty for discriminatory action taken toward employee). A general

summary judgment was granted in favor of appellees. Appellants challenge the propriety of the summary judgment in four points of error.[1]

### STANDARD OF REVIEW

■ For summary judgment to be proper, the movant must be entitled to judgment as a matter of law, and there must be no issues of material fact. *Nixon v. Mr. Property Management, Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Moving for judgment on the affirmative defense of limitations, appellees assumed the burden of establishing as a matter of law when appellants' causes of action accrued and that there was no genuine issue of fact about when they discovered or should have discovered the nature of their injury. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996). If the discovery rule is raised by the plaintiffs in their pleadings, even though not in response to defendant's motion for summary judgment, the defendant has the burden of negating the discovery rule. *Marchal v. Webb,* 859 S.W.2d 408, 418 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

### ARGUMENTS ON APPEAL

In challenging the trial court's determination that their claims were filed beyond the limitations period, appellants advance two arguments. In their first two points of error, appellants argue that the limitations period on their discharge cause of action began to run on July 31, 1995, their last day of employment. Appellants assert that the Act establishes distinct causes of action for "adverse employment action" and "termination," and argue that the underlying facts gave rise to two actionable violations of the Act with each violation invoking its own limitations period. They assert that the Council's decision to terminate, an "adverse personnel action," constituted the first violation of the Act; the actual termination was the second violation of the Act. The limitations period for the termination began to run on July 31, 1995. The 90th day thereafter was October 30, 1995, and therefore the filing of the suit was timely. Alternatively, in points of error

three and four, appellants claim that the discovery rule tolled the running of their limitations period until October 10, 1995, the day they learned that the stated reason for their terminations was pre-textual. We reject both arguments.

### 1. Accrual of Cause of Action

■ The Whistleblower Act prohibits a state or local governmental entity from suspending or terminating the employment of or taking *other adverse personnel action* against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority. TEX.GOV'T CODE ANN. § 554.002 (Vernon 1994 & Supp.1998) (emphasis added). While we agree that the Act identifies several ways in which a state or local governmental entity engages in prohibited conduct, and by extension provides for appropriate remedies depending upon the injury, *see id.* at § 554.003, we cannot agree that more than one alleged violation of the Act occurred in the instant case. Here, appellants were only retaliated against in one way. They were fired. Had appellants been demoted, suspended, or relieved of certain duties prior to their terminations, appellees would have arguably committed more than one violation of the Act. *See Anders v. Weslaco,* 960 S.W.2d 289, 1997 WL 762080, at *1–2 (Tex.App.—Corpus Christi, Dec.11, 1997, n.w.h.) (first relieving teacher of coaching duties and then re-assigning to different campus in response to reporting violations of school athletic programs constituted two arguable violations of Whistleblower Act). A decision to terminate is the necessary predicate for a termination, and therefore, it cannot be said that two causes of action result from one discriminatory act.

■ We thus turn to the critical inquiry of when appellants' causes of action for retaliatory discharge occurred. The Whistleblower Act requires suit to be filed within 90 days after the date of the alleged violation occurred or was discovered by the employee through reasonable diligence, excluding time spent exhausting the employer's internal grievance or appeal procedures. TEX.GOV'T

---

**1.** Appellants did not challenge Mayor Williams' independent ground for entitlement to judgment in the trial court or in this court; their challenge is limited to the limitations issue.

CODE ANN. § 554.005–.006 (Vernon 1994). As noted, appellants urge that their limitations period began to run on July 31, their last day of employment. By contrast, appellees assert that appellants' limitations period began to run on July 11, the date they learned the council voted to proceed with the terminations, or, at the very least, on the date appellants received written notification of their terminations from the chief of police. Stated differently, appellees argue that appellants' causes of action for retaliatory discharge accrued once they had unequivocal notice of termination.

We have found no cases addressing the specific issue of commencement of limitations for a retaliatory discharge claim under the Whistleblower Act where, as in the instant case, the plaintiff is given advance notification of termination. The Texas Supreme Court, however, has considered this issue in the context of the Workers' Compensation Act and the Texas Commission on Human Rights Act, and concluded, in each instance, that a claim for an allegedly discriminatory employment decision accrues when the employee receives unequivocal notice of the discriminatory decision, not when the effects of such decision are realized. *See Johnson & Johnson Medical, Inc. v. Sanchez*, 924 S.W.2d 925, 928–29 (Tex.1996) (Workers' Compensation Act); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492–93 (Tex.1996) (Texas Commission Human Rights Act).

In *DeMoranville*, the plaintiff filed an age discrimination complaint with the Texas Commission on Human Rights, complaining that her supervisor discriminated against her by continually criticizing her and by making her work after hours while favoring younger women, thereby creating a hostile work environment and causing her stress. *DeMoranville*, 933 S.W.2d at 491. On her doctor's recommendation, the plaintiff took medical leave from her job. *Id.* at 492. When her condition failed to improve, the plaintiff was placed on short-term disability and was informed that she would be fired if her leave lasted longer than one year. *Id.* The plaintiff did not return to work, was terminated, and subsequently filed her complaint within 180 days of her termination becoming effective. *Id.*[2] In holding that plaintiff's complaint was not timely filed, the Court explained that her complaint accrued when she was informed of the allegedly discriminatory employment action, not when she was later terminated. *Id.*

The Court applied this same limitations analysis in *Sanchez* when it reversed a summary judgment on the basis that a retaliatory discharge claim under the Workers' Compensation statute was filed beyond the limitations period. *Sanchez*, 924 S.W.2d at 928–29.[3] There, the plaintiff suffered a work-related injury in April 1987, and shortly thereafter began a medical leave of absence. *Id.* at 927. After several months without improvement, the plaintiff was placed on "indefinite medical leave," but was informed that she would receive the first available job once her doctor approved her return to work. *Id.* Plaintiff was never called back to work, and in April 1991, she brought suit for retaliatory discharge in violation of the Workers' Compensation Act. *Id.* Ultimately, the Court concluded summary judgment was improper because a fact issue existed regarding when plaintiff received unequivocal notice or should have known of her termination, and emphasized its earlier holding in *DeMoranville* noting that in determining when a cause of action accrues in discrimination cases, '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts [result in termination].' *Sanchez*, 924 S.W.2d at 929 (quoting *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996) (quoting *Delaware State College v. Ricks*, 449 U.S. 250,

---

**2.** A complaint of unlawful employment practices must be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred. TEX.LABOR CODE ANN § 21.202 (Vernon 1996).

**3.** Suit for retaliatory discharge under Workers' Compensation Act must be brought within two years from date of accrual of action. *See Almazan v. United Services Auto. Ass'n, Inc.*, 840 S.W.2d 776, 780 (Tex.App.—San Antonio 1992, writ denied) (discussing period of limitations under prior law).

258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). Importantly, the *Sanchez* court underscored that such limitations analysis applies in employment discrimination cases regardless of the statute under which the plaintiff seeks redress. *See Sanchez*, 924 S.W.2d at 929. Because the Whistleblower Act, like the Workers' Compensation Act and the Texas Commission on Human Rights Act, proscribes discriminatory employment action, we find the limitations analysis first articulated in *DeMoranville* and reiterated in *Sanchez* applicable to the instant case.

Applying this rule to the instant case, we hold that appellants' causes of action for retaliatory discharge accrued on July 17, 1995, when appellants received unequivocal written notification of termination. Appellants' deposition testimony confirms that on July 11 they knew they had been terminated, and they subjectively believed the terminations were driven by a retaliatory motive for recent whistleblowing activities. Since appellants' suit was not brought within 90 days of July 17, it is time-barred. Accordingly, points of error one and two are overruled.

### 2. Discovery Rule

■ Alternatively, in points of error three and four, appellants claim the discovery rule tolled the running of their limitations period until October 10, 1995, the day they learned that the stated reason for their terminations was pre-textual. The discovery rule is an exception to the general rule that a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy. *See S.V. v. R.V.*, 933 S.W.2d 1, 4–6 (Tex.1996) (explaining scope of discovery rule encompasses cases involving allegations of fraudulent concealment and cases where injury inherently undiscoverable and evidence of injury objectively verifiable). When applied, the rule tolls the running of the statute of limitations until the plaintiff discovers the injury, or acquires knowledge of facts which, in the exercise of reasonable care and diligence, would lead to the discovery of the wrongful act and resulting injury. *Id.* at 6.

Appellants' discovery rule argument fails in light of their deposition testimony. The record affirmatively demonstrates that on July 11, appellants were aware they had been terminated, and were aware of the allegedly wrongful nature of the terminations due to the "temporal proximity" following their whistleblowing activities. Simply put, appellants knew of appellees' allegedly wrongful act and the resulting injuries prior to October 10, 1995. Accrual of appellants' wrongful discharge claims was not delayed merely because the Mayor's statements on October 10 confirmed their existing belief of retaliation. Points of error three and four are overruled.

We hold that the trial court properly determined that appellants' claims were time-barred because suit was not filed within 90 days after appellants received unequivocal notice of termination. *See Jennings*, 917 S.W.2d at 793. The judgment of the trial court is affirmed.