**Caster Derra GOVANT, Appellant,**

v.

**HOUSTON COMMUNITY COLLEGE SYSTEM and Bob Hayes, Appellees.**

No. 14–00–01088–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 17, 2002.

Rehearing Overruled Feb. 21, 2002.

Joseph R. Willie, II, Houston, for appellants.

Arturo G. Michel, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

This appeal arises from the failure to renew the employment contract of a peace officer. Appellant, Caster Derra Govant ("Govant"), sued his former employer, Houston Community College System

("HCCS"), and HCCS Chief of Police Bob Hayes ("Hayes"), claiming violations of his equal protection and due process rights under the Texas Constitution, racial discrimination, negligence, and negligence per se. The trial court rendered summary judgment in favor of appellees. In three points of error, appellant contends: (1) the affidavits offered by appellees in their motion were defective for failure to state how the affiants were identified, and thus the trial court erred in granting summary judgment on the basis of such proof; (2) the trial court erred in concluding Hayes was entitled to official immunity; and (3) the trial court erred in granting summary judgment because genuine issues of material fact exist as to his equal protection and due process causes of action under the Texas Constitution. We affirm in part and reverse in part.

Govant began employment as a peace officer for HCCS on September 1, 1995, pursuant to an employment contract which, in pertinent part, provided:

> The employment of [Govant] shall be from September 1, 1995 through August 31, 1996. This Agreement shall terminate on August 31, 1996, if it has not previously been terminated. Renewal or continued employment beyond the term of this Agreement is within the discretion of [HCCS] and requires an action on the part of [HCCS]. [HCCS] may non-renew [Govant] at the end of the contract term for any reason or no reason at all, so long as the reason is not an illegal one. [Govant] shall have no expectation of continued employment or property interest in his or her employment with the System beyond the term of this Agreement.

On March 25, 1996, Hayes recommended that Govant be terminated for insubordination (refusing to tell Hayes why he had lied about his travel plans for Thanksgiving 1995); improper conduct (illegally parking his car in a handicapped space); sleeping on duty, failure to follow orders (failing to respond to a police dispatch or advise the dispatcher that he would not respond); and untruthfulness (claiming overtime for a non-existent court hearing). Govant requested a hearing, and on April 19, 1996, the Office of Human Resources sent correspondence to Govant notifying him that a hearing would be held on May 2, 1996. An independent hearing officer also sent written notice of the hearing to Govant's attorney on April 26, 1996, and left a message concerning the hearing with the attorney's telephone answering service. On May 1, 1996, Govant's attorney called the hearing officer to report that he would need additional time to prepare for the hearing.

The hearing proceeded on May 2, 1996, but only HCCS presented its evidence to the hearing officer as Govant and his attorney failed to appear. Following the hearing, the hearing officer left a message with Govant's attorney's office regarding Govant's non-appearance, and indicated that consideration would be given toward reopening the hearing if a motion for continuance was filed. No such motion was forthcoming, as the hearing officer discovered after making inquiries on May 17, 1996. Three days later, on May 20, 1996, the hearing officer issued findings of fact and conclusions of law in which she concluded that HCCS had proven the essential elements of each of its allegations and that Govant's employment should be terminated. Govant was informed by a letter dated May 21, 1996, both of the hearing officer's decision and Govant's right to appeal within seven days. Govant communicated his intent to appeal the termination by letter dated May 31, 1996.

Separately, and pursuant to another recommendation from Hayes, HCCS notified Govant by letter dated August 15, 1996, that his contract would not be renewed for the period beginning September 1, 1996, through August 31, 1997. Subsequently, Govant requested a second hearing before the independent hearing officer on the matter of his termination. This request being granted, the Board of HCCS held the nonrenewal recommendation in abeyance pending the second hearing.

HCCS made several attempts to contact Govant to schedule the second hearing he had requested, but such efforts proved unavailing. On October 15, 1996, HCCS warned Govant by letter that it would proceed with the recommendation for nonrenewal if he failed to provide a written request for a continuance and suggested dates for the hearing by October 31, 1996. No response was received. Several months later, on January 23, 1997, the Board of HCCS, by unanimous vote, elected not to renew Govant's contract retroactive to August 31, 1996. On February 5, 1997, as required by the Texas Occupation Code, Hayes notified the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) through a "Report of Resignation or Separation of License Holder" (the "Report") that Govant's contract had not been renewed.

Govant thereafter filed suit against HCCS and Hayes, claiming violations of his equal protection and due process rights under the Texas Constitution, racial discrimination under section 106.001 of the Civil Practice and Remedies Code,[1] and negligence and negligence per se under the Education Code for Hayes' alleged failure to forward Govant a copy of the report sent to TCLEOSE. HCCS and Hayes thereafter moved for summary judgment,

and the trial court granted the motion without specifying the grounds therefor.

In his first point of error, Govant contends the trial court erred in granting summary judgment because the affidavits proffered by appellees in support of their motion were defective. Specifically, Govant complains that, as the notary failed to state either that he personally knew each affiant or that the affiant produced identification, the affidavits failed to comply with sections 121.005 and 121.007 of the Civil Practice and Remedies Code, and were thus incompetent summary judgment proof.

An affidavit is a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified by the officer under his seal of office. TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 1998). While no particular terminology is required to render a document an affidavit, as it is an affidavit's substance and not its form that is significant, an affidavit typically includes "the caption or title, the venue, the signature of the affiant, the jurat and the body of the instrument." *Acme Brick v. Temple Associates, Inc.*, 816 S.W.2d 440, 441 (Tex.App.-Waco 1991, writ denied) (quoting *Hill v. Floating Decks of America*, 590 S.W.2d 723, 729 (Tex.App.-San Antonio 1979, no writ), for the finding that a jurat is a " 'certificate by a competent officer that the writing was sworn to by the person who signed it' "); *Bloyed v. General Motors Corp.*, 881 S.W.2d 422, 434 (Tex.App.-Texarkana 1994), *aff'd*, 916 S.W.2d 949 (Tex.1996); *see also Acme Brick*, 816 S.W.2d at 441. All three of the affidavits contested by Govant contain these elements.

---

1. Govant did not preserve his claim under section 106.001 of the Civil Practice and Remedies Code, precluding consideration of this issue on appeal.

Govant argues, however, pursuant to sections 121.005 and 121.007 of the Civil Practice and Remedies Code, that the affidavits are of no legal effect as they each fail to include a statement as to the identification of the affiant by the notary. Govant's reliance on these statutory provisions is misplaced. Sections 121.005 and 121.007 govern acknowledgments of written instruments, not affidavits.[2] Appellant's first point of error is thus wholly without merit, and is overruled.

■ In his second point of error, Govant contends Hayes is not entitled to the defense of official immunity, and thus the trial court erred in granting summary judgment. Specifically, Govant complains his peace officer's license became dormant and he was unable to obtain employment as a law enforcement officer as a consequence of Hayes' failure to carry out the ministerial duty of immediately forwarding copies of the Report to TCLEOSE and to Govant upon the nonrenewal of his employment contract.

Section 1701.452 of the Texas Occupations Code (formerly section 415.0635(a) of the Texas Government Code) provides, under the caption "Employment Termination Report," the following:

> (a) The head of a law enforcement agency shall submit a report to [TCLEOSE] on a form prescribed by [TCLEOSE] regarding a person licensed under this chapter who resigns from the employment of the law en-

forcement agency or whose appointment with the law enforcement agency is terminated. The agency head shall include in the report an explanation of the circumstances under which the person resigned or was terminated.

> (b) The head of the law enforcement agency from which a person resigns or is terminated shall provide to the person a copy of the report. The person may submit a written statement to [TCLEOSE] to contest or explain any matter contained in the report.

TEX. OCC.CODE ANN. § 1701.452 (Vernon 2001). The statute thus does not prescribe a time within which the head of a law enforcement agency must file a report with TCLEOSE. In the absence of such a limit, a reasonable time must be allowed.

Here, Govant's employment terminated on August 31, 1996, by the express terms of his employment contract. Moreover, the contract unequivocally provided that any renewal of the contract or continued employment beyond August 31, 1996, would require "an action on the part of [HCCS]." HCCS took no such action to renew or extend the contract. Thus, Govant's employment terminated on August 31, 1996. Hayes, however, did not file or provide a copy of the Report with TCLEOSE until some five months later, on February 5, 1997. We find, in this context, that five months is not a reason-

---

**2.** In a chapter captioned "Acknowledgment and Proofs of Written Instruments," section 121.005 provides in pertinent part as follows:

(a) An officer may not take acknowledgment of a *written instrument* unless the officer knows or has satisfactory evidence that the acknowledging person is the person who executed the instrument and is described in it. . . .

(b) Except in a short form certificate of acknowledgment authorized by Section

121.008, the officer must note in the certificate of acknowledgment that:

(1) he personally knows the acknowledging person; or

(2) evidence of a witness or an identification card or other document was used to identify the acknowledging person.

TEX. CIV. PRAC. & REM.CODE ANN. § 121.005 (Vernon Supp.2001). Section 121.007 provides the form for an ordinary certificate of acknowledgment. *See id.* § 121.007.

able period of time. Accordingly, Hayes failed to satisfy the requirements of section 1701.452(a).

■ Govant further asserts that under section 1701.452(b), Hayes had no discretion in forwarding him a copy of the Report, and thus is precluded from asserting official immunity. Official immunity is a defense that protects governmental employees from personal liability in suits arising from their performance of a discretionary function in good faith that was within the scope of the employee's authority. *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994); *Geick v. Zigler*, 978 S.W.2d 261, 264 (Tex.App.-Houston [14th Dist] 1998, no pet.). Thus, the essential elements of the affirmative defense of official immunity are: (1) the performance of a discretionary function; (2) in good faith; (3) within the scope of the governmental employee's authority. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000). Govant concedes Hayes acted in good faith and within the scope of his authority when dealing with the Report. However, the remaining element, whether his decisions were ministerial or required the exercise of judgment or discretion, is disputed.

■ Ministerial acts are those wherein " 'the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996) (per curiam) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994)). They require obedience to orders or the performance of a duty to which the actor has no choice. *Id.* If, however, an action "involves personal deliberation, decision and judgment, it is discretionary." *Id.*

Section 1701.452(b) neither prescribes a time period within which a copy of an employment termination report must be sent nor dictates the means for its transmission. HCCS and Hayes, therefore, argue it does not define the duties to be performed with such specificity as to leave nothing to the latter's discretion. The statute unequivocally requires, however, that a copy of the employment termination report be provided to the former employee. In this, the head of the law enforcement agency has no discretion. Hayes was under a ministerial duty to provide Govant a copy of the Report, and the record is bereft of any evidence that he ever satisfied this duty. Accordingly, the trial court erred in concluding Hayes was entitled to official immunity. Appellant's second point of error is sustained.

■ In his third point of error, Govant avers the trial court erred in granting summary judgment because genuine issues of material fact exist as to his equal protection and due process causes of action under the Texas Constitution. Govant vaguely alleges: (1) he was denied the protections afforded other employees when HCCS failed to reschedule a second administrative hearing after agreeing to do so; and (2) he was denied the opportunity to be heard at a meaningful time and in a meaningful manner concerning the deprivation of his protected property interest in continued employment. We disagree.

The equal rights clause of the Texas Constitution provides:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

Tex. Const. art. I, § 3. To prevail on a claim under this section, Govant must first show HCCS treated him differently from those persons similarly situated. *See City of Cleburne, Texas v. Cleburne Living*

*Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *see also Vera v. Tue*, 73 F.3d 604, 609–10 (5th Cir.1996) ("A violation of the equal protection clause occurs only when ... the governmental action in question classifies between two or more relevant persons or groups."); *Pehnke v. City of Galveston*, 977 F.Supp. 827, 829 (S.D.Tex.1997) (quoting *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 932 (5th Cir.1988), for the proposition that if a challenged governmental action " 'does not appear to *classify* or distinguish between two or more persons or groups, then the action does not deny equal protection' ").[3]

In the present case, Govant blithely asks us to assume that he is in a class by himself, separate from those HCCS employees who have been afforded more favorable treatment in the rescheduling of their administrative hearings. Even were we to allow Govant such a conceit, however, he has failed to proffer any evidence whatsoever concerning the rescheduling of other employees' administrative hearings. Thus, the record contains no evidence that the other class he posits even exists, let alone has been favored. In sum, Govant has proffered no evidence that a classification was made, and his equal protection claim fails as a consequence.

Moreover, to prevail in his equal protection claim Govant "must show intentional or purposeful discrimination" motivated the failure of HCCS to reschedule a second hearing. *Nelson v. Clements*, 831 S.W.2d 587, 590 (Tex.App.-Austin 1992, writ denied); *see also Pehnke*, 977 F.Supp. at 829–30. This he has also wholly failed to do. Govant has neither denied receiving HCCS's correspondence regarding the

scheduling of a second hearing nor alleged facts as to his failure to respond. Govant argues no facts that implicate intentional or purposeful discrimination on the part of HCCS. Accordingly, his equal protection claim is insupportable as a matter of law.

■ Although his argument is unclear, it also appears that Govant alleges a violation of due process under the Texas Constitution. As the pertinent facts are uncontroverted, we consider the gravamen of Govant's complaint to be that he was denied the opportunity to be heard at a meaningful time and in a meaningful manner concerning the deprivation of his protected property interest in continued employment.

■ The due course of law provision of the Texas Constitution provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19; *see also Univ. of Texas Med. School v. Than*, 901 S.W.2d 926, 929 (Tex.1995) (noting that there is no "meaningful distinction" between "due course of law" under the Texas Constitution and "due process" under the United States Constitution). Due course of law of law exists to prevent government from depriving persons of liberty and property without notice and hearing. *Chandler v. Jorge A. Gutierrez, P.C.*, 906 S.W.2d 195, 202 (Tex.App.-Austin 1995, writ denied); *Nelson*, 831 S.W.2d at 591. Govant does not argue on appeal that he was deprived of a liberty interest; he claims only that he had a constitutionally protected property interest in his continued employment and

---

**3.** Although Govant's claims are brought solely under the Texas Constitution, decisions interpreting the United States Constitution are instructive because the federal constitution has

been held to establish a minimum standard below which the state constitution may not fall. *See Whitworth v. Bynum*, 699 S.W.2d 194, 196 (Tex.1985).

failed to receive due process in the method used to terminate that right.

■ "To have a protectable property interest in public employment, a person must have more than a unilateral expectation, he must have a claim of entitlement." *McCartney v. May*, 50 S.W.3d 599, 607 (Tex.App.-Texarkana 2001, no pet.) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Nelson*, 831 S.W.2d at 591 (noting that "[a] person has a constitutionally protected property interest in a benefit only if the person has a legitimate claim to its entitlement"). Govant cannot show such an entitlement; HCCS did not terminate his employment before the expiration of the contract, it merely declined to offer him another year of employment. Moreover, the contract explicitly provides that Govant "shall have no expectation of continued employment or property interest in his ... employment with [HCCS] beyond the term" of the agreement. At most, therefore, Govant had only a unilateral and unreasonable expectation that his contract would be renewed for another year. "Such an expectation is not a constitutionally protected property interest giving rise to due process requirements." *Nelson*, 831 S.W.2d at 591. Govant's due course of law claim fails as a matter of law, and thus his third point of error is overruled.

Accordingly, we affirm the judgment of the trial court as to the competency of the summary judgment proof and the absence of genuine issues of material fact as to Govant's equal protection and due course of law claims, reverse the judgment of the trial court as to Hayes' claim of official immunity, and remand to the trial court for further proceedings consistent with this opinion.